NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Bankruptcy Case No. 08-13759 |
| MICHAEL B. KAZIN | Chapter 7 |
| Debtor. | |
| THE CADLE COMPANY | |
| Plaintiff, | |
| vs. | Adversary No. 08-2529 |
| MICHAEL B. KAZIN | |
| Defendant. | Hearing Date: June 8, 2009 |

**MEMORANDUM OPINION**

Defendant's Motion for Summary Judgment
Document Number 14

Plaintiff's Motion for Partial Summary Judgment and Enforcement of Subpoena
Document Number 16

**APPEARANCES**

David K. DeLonge, Esquire
**SCHUMANN HANLON LLC**
30 Montgomery Street, 15th Floor
Jersey City, New Jersey 07302
Attorney for Plaintiff

Brian W. Hofmeister, Esquire
**TEICH GROH**
691 State Highway 33
Trenton, New Jersey 08619
Attorney for Defendant

THE HONORABLE KATHRYN C. FERGUSON, USBJ

The Cadle Company ("Cadle") filed a four count complaint seeking to deny the Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), 727(a)(2)(A), and 727(a)(3). On April 30, 2009, the Debtor moved for summary judgment. On May 18, 2009, Cadle moved for partial summary judgment and to enforce a subpoena. On June 8, 2009, the Court took oral argument on the motions and reserved decision.

I. Summary judgment standard

Summary judgment is not lightly granted. The Federal Rules provide that summary judgment should be granted only when the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. Pro.* 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Third Circuit has stated that whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted." Tomalewski v. State Farm Life Ins, Co., 494 F.2d 882, 884 (3d Cir. 1984). Facts must be viewed in the light most favorable to the party against whom summary judgment is sought. Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005).

That does not mean that summary judgment is never appropriate. When a party opposes a summary judgment motion, it may not rely on vague allegations or denials. The pivotal language in the Rule is that the nonmoving party must come forward with "specific facts showing that there is a **genuine** issue for trial." *Fed. R. Civ. Proc.* 56(e) (emphasis added). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986);

In re CitX Corp., Inc., 448 F.3d 672 (3d Cir. 2006).

II. Objections to discharge

Congress described § 727's discharge provision as "the heart of the fresh start provisions of the bankruptcy law." H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977). In keeping with that, courts have uniformly held that § 727 must be construed liberally in favor of the debtor. *See, e.g.*, In re Brown, 108 F.3d 1290 (10th Cir. 1997); In re Burgess, 955 F.2d 134 (1st Cir. 1992); In re Adeeb, 787 F.2d 1339, 1342 (9th Cir. 1986). The Third Circuit has recognized that "[c]ompletely denying a Debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). The standard of proof for actions brought under § 727 is the "preponderance of the evidence" standard. Grogan v. Garner, 498 U.S. 279 (1991). The burden of proof, as in most adversary proceedings and civil matters, is on the plaintiff. Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992).

**A. First Count**

The First Count is premised on § 727(a)(4)(A) which provides that a debtor shall be denied a discharge if he "knowingly and fraudulently, in or in connection with the case – made a false oath or account." In order to deny a discharge to a debtor under this subparagraph, the plaintiff must establish that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *See*, Korte v. United States of America Internal Revenue Service (In re Korte), 262 B.R. 464, 474 (8th Cir. BAP 2001); In re Foster, 335 B.R. 709, 714-15 (Bankr. E.D. Mo. 2006).

The Complaint lists eleven separate false oaths allegedly made by the Debtor in his bankruptcy petition, schedules, statement of financial affairs, or at his Rule 2004 examination. *Complaint* at ¶ 9(a) - (k). Since the vast majority of the allegations focus on the petition and related documents Cadle easily satisfies the second element. Federal Rule of Bankruptcy Procedure 1008 requires that a debtor's signature on the Petition, the Schedules of Assets and Liabilities, and Statement of Financial Affairs be verified, therefore, any statements in those documents are the types of oaths that fall within the ambit of § 7272(a)(4). *See*, In re Bren, 303 B.R. 610, 613 (8th Cir. BAP 2004). The Court will examine whether the other three requirements under § 727(a)(4) are satisfied in the context of the individual allegations.

    I) *Failure to list an equitable interest in 10 Rosetree Lane, Lawrenceville, NJ*

It is undisputed that in 1989 the Debtor deeded 10 Rosetree Lane, Lawrenceville, NJ to his wife, Christine Petrizelli. Since the Debtor holds no title interest in the property, the Court does not find that the failure to list an alleged equitable interest in the property, an interest that the Debtor denies exists, to be a false oath. Cadle's allegation that the Debtor retained a hidden equitable interest in the property will be addressed later in the opinion.

    ii) *Bank accounts*

    a) Bank of America accounts

Cadle alleges that the Debtor made a false oath in Schedule B when he listed only a one half interest in joint bank accounts he holds with his wife at Bank of America. One of the four elements Cadle must establish under § 727(a)(4) is that any false oath regards a material matter. It has been held that bank accounts are quintessentially material in a bankruptcy case. *See, e.g.,* In re Pratt, 411

5

F.3d 561, 566-67 (5th Cir. 2005). As one court stated: "Few, if any, assets are more material to a consumer debtor's financial affairs than a bank account, for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the details of the debtor's finances." Johnson v. Baldridge (In re Baldridge), 256 B.R. 284, 290 (Bankr. E.D. Ark. 2000). Here, the Debtor did not fail to list the bank accounts, rather he listed only a one half interest. Therefore, the focus of the inquiry must be on whether listing a one half interest was done with fraudulent intent.

These bank accounts were the subject of a separate motion by Cadle objecting to the Debtor's claimed exemption. In the context of that motion, the Court ruled that under New Jersey law "a joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal." *N.J.S.A*. 17:16I-4. In light of that ruling, the Debtor promptly amended Schedule B to reflect 100% ownership of the accounts. Although that statute merely creates a rebuttable presumption regarding ownership, the Debtor did not attempt to argue that the funds belonged to his wife or require Cadle to attempt to trace the funds on deposit in the accounts. Additionally, the Debtor certified that he listed the bank accounts as he did because he believed that regardless of the source of the deposits that his wife had a one-half interest in the accounts because she was a joint holder on the account. *Kazin cert.* at ¶ 2. That is a commonly held belief and is not indicative of fraudulent intent. Given the totality of the circumstances, the Court finds that Cadle has not sustained its burden of proving that the Debtor had fraudulent intent in listing only a half interest in joint accounts.

b) Commerce Bank account

Cadle alleges that the Debtor failed to list his interest in a Personal Statement Savings account at Commerce Bank. The Debtor has stated that he discovered the omitted account in the course of responding to Cadle's document demands. The Debtor amended his Schedule B to include this account with an approximate value of $236. As previously noted, a bank account is considered almost *per se* material. Baldridge at 290. The fact that the balance is *de minimus* does render the omission immaterial. In re Mathern, 137 B.R. 311 (Bankr. D. Minn. 1992). That does not mean that the amount in the bank account is irrelevant; it could be relevant to a determination of intent. As here, the small amount in the bank account lends credence to the Debtor's statement that he inadvertently omitted it from his bankruptcy schedules. That is further supported by the fact that the Debtor voluntarily amended his schedules to include that asset; the amendment was not in response to any action by Cadle. The only logical inference that can be drawn from those two facts is that the failure to list the bank account was inadvertent and not a knowing and fraudulent omission intended to prevent creditors from discovering this asset. Therefore, Cadle has not sustained its burden of establishing that the Debtor's initial omission was done with fraudulent intent.

The Court finds it appropriate to comment at this juncture on making findings regarding intent on a motion for summary judgment. The Supreme Court has cautioned that in cases where "motive and intent play leading roles" summary judgment should be used sparingly. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). That does not mean it is impossible to establish intent on a motion for summary judgment, it simply means that courts must apply special scrutiny to such motions. Geier v. Medtronic, Inc., 99 F.3d 238 (7th Cir. 1996). Time and again,

7

courts have found it appropriate to grant summary judgment even though subjective factors such as motive or intent are the fact issue in question. *See, e.g.,* First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 279 (1968); Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 681 (9th Cir. 1985); In re Mathern,137 B.R. 311, 322 (Bankr. D. Minn. 1992).

      iii) *Household goods and furnishings*

Cadle asserts that the Debtor undervalued his household goods and furnishings when he listed their value at $5,000. Cadle additionally argues that the Debtor filed to itemize and schedule a lawn tractor, air compressor and various other tools and such acquired in the four years prior to filing. Cadle has not come forth with any evidence to challenge the validity of the Debtor's estimate of the value of his one half interest in his household goods. As previously stated, when a party opposes a summary judgment motion, it may not rely on vague allegations or denials. The Debtor's valuation is supported by his testimony at his Rule 2004 examination in which he testified that those items are all many years old and have very little value. *Kazin cert.* Ex. C at 131-38. That fact is not disputed by Cadle. Based on that undisputed evidence, the Court finds that the listing of the value of the personal property at $5,000 does not violate § 727(a)(4).

      iv) *AXA Equitable life insurance policy and annuity*

Cadle objects to Debtor's Schedule B wherein he responds to item 9 regarding insurance policies and annuities as "none". Cadle contends that the Debtor held an interest in a life insurance policy issued by AXA Equitable and an annuity account. Debtor later amended his schedules to list the AXA Equitable insurance policy. The Debtor points out that his amendment of his schedules to include the AXA policy was prior to his Rule 2004 exam and was not in response to any request

or inquiry by Cadle. Cadle cites <u>Swicegood v. Ginn</u>, 924 F.2d 230 (11th Cir. 1991) in support of its argument that the Debtor's amendment of his schedules "does not purge his omission". While that is true, the <u>Swicegood</u> case is a prime example of how a court should evaluate an amendment. In <u>Swicegood</u>, despite the debtor's amendment of his schedules to include a Rolex watch, the court found that he had knowingly and fraudulently omitted it on his original petition. The basis of the court's decision was not that amendments do not purge an omission. The <u>Swicegood</u> court based its decision on the fact that the debtor amended his schedules to include the omitted asset only when he became aware that his ex-wife had revealed its existence to the creditor, his amendment significantly undervalued the asset, and the court found it implausible that the debtor simply forgot about the Rolex's existence because he wore it regularly. No comprable factors are present here. The Debtor amended his petition to include the AXA policy of his own accord, the amendment did not undervalue the asset, and there are no facts that suggest it is implausible that the Debtor simply forgot to include the asset the first time around. The Bankruptcy Code does not require that every petition be perfect. If it did, there would be no reason to have provisions regarding amendments. When a debtor *sua sponte* amends to include an asset that was not unearthed by a creditor, absent compelling circumstances such as those in <u>Swicegood</u>, it is difficult to find that the omission of the asset in the first instance was fraudulent. Here, the Court finds that the Debtor did not omit the AXA insurance policy from his bankruptcy schedules with fraudulent intent.

As for the annuity account, the Debtor provided Cadle with a letter from Bank of America dated October 28, 2008 that explained that neither Kazin nor his wife had an annuity with Bank of America and that the notation on their bank account of "annuity credit" was merely overdraft

9

protection. *Kazin cert.* Ex. I. Despite that, Cadle continues to insist that there is no indication that this is not an annuity account. The Court finds that statement to be disingenuous. The letter from Bank of America clearly states that "this is not an actual account." It is unclear what further proof Cadle seeks, but certainly their mere suspicion is not enough to create a genuine factual dispute regarding the existence of an annuity account. To demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,* 475 U.S. 574, 586 (1986); Juarez v. Ameritech Mobile Communications, Inc.*,* 957 F.2d 317, 322 (7th Cir. 1992). The evidence that the non-moving party produces to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair-minded fact finder to return a verdict in favor of the non-movant, bearing in mind the applicable standard of proof that would apply at trial on the merits. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Facts that could alter the outcome are material and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. Horowitz v. Federal Kemper Life Assurance Co. 57 F.3d 300, 302 n. 1 (Fed. Cir. 1995). Cadle has not satisfied that standard with regard to the allegation that there is an annuity account, therefore, the Court will grant summary judgment in favor of the movant on that issue.

    v) *Tax refunds*

Cadle alleges that the Debtor failed to schedule a federal tax refund of $5,677 and a state tax refund of $1,604 that he received in May 2008. The Debtor explains that his 2007 tax returns had not been filed at the time he filed his petition so he was unaware that he would be entitled to a

refund. Cadle responds that the Debtor should have known because he received tax refunds in previous years and his contention that any refund would be the property of his wife is not supported by the tax laws. Neither of those contentions addresses the elements of § 727(a)(4). Cadle has not sustained its burden on this issue.

      vi) *credit card payments*

Cadle alleges that the Debtor neglected to list numerous credit card payments made during the three months preceding filing. The Debtor explains that none of the payments were for more than $1,000 and that since they were joint payments that means that none of them were over the $600 limit that requires disclosure. Also, in Item 3 of his Statement of Financial Affairs the Debtor, on advice of counsel, disclosed that he made ordinary course payments to creditors. The Court finds that even if the Debtor was mistaken about the need to disclose those payments his disclosure of ordinary course payments to creditors belies any inference that the failure to list them was a knowing and fraudulent omission. Therefore, Cadle has failed to establish one of the elements of § 727(a)(4).

      vii) *gifts or charitable contributions*

Cadle alleges that the Debtor failed to list a $2,400 pledge made to the First Presbyterian Church. The Debtor testified that all charitable contributions, with the exceptions of occasional *de minimus* contributions, were made by his wife from her own funds. Cadle has brought forth no credible evidence to dispute that assertion and create a genuine factual dispute. The Court will grant summary judgment in the Debtor's favor on this issue.

viii) *other transfers*

Cadle alleges that in January 2008 the Debtor transferred $1,000 to his wife's bank account, paid for the installation of a hot water heater in his wife's residence, and made numerous purchases at Home Depot, Lowe's, etc. All of the purchases that Cadle identifies are consistent with the Debtor's contention that he and his wife share the costs for upkeep and maintenance of the home in which they both live. These allegations are more properly part of Cadle's argument that the Debtor retains a hidden interest in the house. The Court will grant summary judgment in the Debtor's favor on this issue.

ix) *property debtor holds for another*

Cadle alleges that the Debtor failed to schedule an account at Colonial Savings in the name of Michael Kazin ACF Matthew Kazin with a balance of approximately $20,000. Cadle has not brought forth any evidence that would create a factual dispute regarding the Debtor's assertion that the Debtor is merely a custodian of that account for his minor son. In fact, the title of the account, which includes the designation "ACF", fully supports the Debtor's position. The Court will grant summary judgment in the Debtor's favor on this issue.

x) *2004 exam testimony*

Cadle alleges that the Debtor provided false testimony at his 2004 examination regarding the RTC judgment, the transfer of 10 Rosewood Lane, and purchases he made at Home Depot and Lowe's. Aside from the RTC allegations, this is simply rehashing arguments the Court has already rejected. As for the RTC judgment, the Debtor states that he obtained a credit report on November 20, 2007, that did not list the judgment that is now held by Cadle. A copy of that report is attached

to the motion. *See*, Exhibit M. He also testified that he does not recall ever receiving a copy of the judgment that RTC obtained in November 1992. Cadle has brought forward no evidence to bring that into genuine dispute. Therefore, the Court will grant summary judgment in the Debtor's favor on this issue.

Although Cadle brings a number of alleged omissions to the Court's attention, the sheer number cannot control. Cadle must establish all of the elements of § 727(a)(4) with regard to each allegation. This is not a situation where the creditor has been able to establish a pattern of reckless indifference to the truth. *See, e.g.,* In re Bailey, 145 B.R. 919 (Bankr N.D. Ill. 1992). On the whole, the Court cannot find that Cadle has established, by a preponderance of the evidence, that the Debtor made a false oath or account. *See,* Grogan v. Garner, 498 U.S. 279, 285-91 (1991) (standard of proof under § 727 is preponderance of the evidence). In reaching this conclusion, the Court is guided by the principal that determining eligibility to a discharge is within the sound discretion of the court, and in exercising that discretion the court must construe evidence strictly against the plaintiff and in favor of the debtor. *See, e.g.,* Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993); In re Burgess, 955 F.2d 134, 137 (1st Cir. 1992).

**B. Second Count**

The Second Count is based on 11 U.S.C. § 727(a)(2)(A). Cadle makes several allegations: 1) that the Debtor transferred $1,000 from a joint account into his wife's separate account; 2) that the Debtor paid $750 for the installation of a hot water heater in the 10 Rosetree Lane property; 3) that the Debtor made unidentified transfers to his wife and son; and 4) that the Debtor transferred $7,000 into a 401(k) retirement account. To establish a claim under § 727(a)(2)(A), the plaintiff

must prove the following four elements: "(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." In re Duncan, 562 F.3d 688, 698 (5th Cir. 2009). Cadle satisfies the third element because all of the challenged transfers were in the year preceding the date of filing.

The first three allegations are a reformulation of some of the allegations in Count One. As with Count One, one of the elements that Cadle needs to establish is fraudulent intent. As the Court found previously, the payment of those expenses is consistent with the Debtor's numerous statements that he did not live in his residence rent free, but rather shared the costs of all the household and living expenses with his wife. *See,* Kazin cert.; Ex. C; Ex. K. Paying those ordinary course expenses is not evidence of an intent to defraud creditors.

As for the allegations regarding the 401(k) account, this Court has already overruled Cadle's objection to the claimed exempt status of those funds that were rolled over from the Debtor's 401(k) into his IRA account. The Court found that the exemption was in good faith. Therefore, that transfer does not support a finding under § 727(a)(2)(A).

**C.  Third Count**

The Third Count alleges a fraudulent concealment of a secret interest in the 10 Rosetree Lane property that continued into the year preceding the filing and thus is avoidable under § 727(a)(2)(A). The Third Circuit Court of Appeals in Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993) recognized a cause of action based on a hidden retained interest. The parties assertions regarding the existence of a secret interest by the Debtor are diametrically opposed. Since these factual assertions go to the heart of the matter they preclude the entry of summary judgment.

**D. Fourth Count**

The Fourth Count alleges failure to maintain records in violation of § 727(a)(3). The purpose of §727(a)(3) is not to require a debtor to keep immaculate books and records, nor is every failure to keep books and records grounds to object to discharge under the Code. In re Decker, 595 F.2d 185, 187 (3d. Cir. 1979). Rather, the purpose of §727(a)(3) is to give creditors and the Bankruptcy Court accurate information concerning the debtor's affairs and to test the completeness of his disclosures. It also allows the Trustee and creditors dependable information from which they can trace a debtor's financial history. Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir. 1992). The Bankruptcy Code does not require any specific form of record keeping. Rather, the test to determine if §727(a)(3) has been satisfied is if there are records available to "'sufficiently identify the transactions [so] that an intelligent inquiry can be made of them,'" and if there is available written evidence "'from which the present financial condition of the bankrupt and his business transactions for reasonable past may be ascertained.'" Meridian v. Alten at 1230 (quoting Decker at 187). To prevail on an objection to discharge under §727(a)(3), a plaintiff's case must show a lack of records so severe that it is impossible to ascertain the debtor's financial condition and material business transactions. In re Brown, 108 F.3d 1290, 1295 (10th Cir. 1997).

Cadle has not even approached meeting that standard. Section 7227(a)(3) has a shifting burden of proof. First the creditor must establish that the debtor's records were insufficient, and only then does the burden shift to the debtor to justify any deficiencies. In re Wolfson, 139 B.R. 279 (Bankr. S.D.N.Y. 1992). Here, the Court cannot find that Cadle has satisfied its initial burden. In response to a 61 item document demand, the Debtor produced nearly 300 pages of documents

15

including bank statements, insurance policies, billing statements, paystubs, and tax returns. The records that Cadle is complaining the Debtor did not have, such as receipts for individual purchases at the Home Depot, are not the type of records that people typically retain. A debtor is only required to maintain records that are reasonable under the circumstances. Broad National Bank v. Kadison, 26 B.R. 1015, 1018 (D.N.J. 1983). The Court will grant summary judgment in the Debtor's favor on the Fourth Count.

III. Plaintiff's request for partial summary judgment

Cadle seeks partial summary judgment finding that the allegations in paragraph 6 of the Complaint are true. That paragraph alleges that Cadle holds a judgment against Michael B. Kazin entered on November 20, 1992 in favor of Resolution Trust Corporation in the amount of $921,000 that was assigned to Cadle in April 2006. Paragraph 6 also alleges that the full amount of that judgment remains due and owing and that Cadle filed a proof of claim in the bankruptcy case on account of it in the amount of $1,729,753.14. In addition, Cadle seeks summary judgment establishing that in October 2004 Laura Harkless communicated with the Debtor and sent him a copy of the outstanding judgment against the Debtor. Cadle relies on the certification of Laura Harkless in support of that allegation.

The Debtor responds that Cadle has not produced any original documentation supporting the underlying judgment and the assignment of that judgment to Cadle. The Debtor argues that the validity of Cadle's judgment thus remains open to challenge. As for the respresentations of Ms. Harkless, Debtor has testified and certified to the fact that he was unaware of the judgment until late 2007. The factual issues raised by the Debtor go to the heart of the matter and are thus genuine

factual disputes that preclude entry of summary judgment in favor of Cadle.

Cadle additionally seeks to compel Christine Petrizelli to respond to a subpoena. That request will be denied because Cadle has not established that Ms. Petrizelli was properly served with the subpoena in question.

## Conclusion

Summary judgment is granted in favor of the Debtor on Counts One, Two and Four. Summary judgment is denied on Count Three. Cadle's cross-motion for summary judgment and to compel is denied. Counsel for the Debtor should submit a form of order in accordance with this opinion.

> */s/ Kathryn C. Ferguson*
> KATHRYN C. FERGUSON
> US Bankruptcy Judge

Dated: July 16, 2009