NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | Bankruptcy Case No. 08-13759 |
|  | : |  |
| MICHAEL B. KAZIN | : | Chapter 7 |
|  | : |  |
| Debtor | : |  |
|  | : |  |
| THE CADLE COMPANY | : |  |
|  | : |  |
| Plaintiff | : |  |
|  | : |  |
| vs. | : | Adversary No. 08-2529 |
|  | : |  |
| MICHAEL B. KAZIN | : |  |
|  | : |  |
| Defendant | : | Trial Date:  12/21/2009 |
|  | : | **MEMORANDUM OPINION** |

## **APPEARANCES**

David K. DeLonge, Esquire
Schumann, Hanlon LLC
30 Montgomery Street
PO Box 2029
Jersey City, New Jersey 07302
Attorney for Plaintiff

Brian W. Hofmeister, Esquire
Teich Groh
691 State Highway 33
Trenton, New Jersey 08619
Attorney for Defendant

The Cadle Company ["Cadle"] filed a four count complaint seeking to deny the Debtor, Michael Kazin, a discharge pursuant to 11 U.S.C. § 727(a).  The Court entered summary judgment in favor of the debtor on three of the four counts on July 16, 2009.  The remaining count is based on 11 U.S.C. § 727(a)(2)(A).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(J).

Factual Background

Defendant/Debtor Michael Kazin was a co-owner of Barnsboro Development Corp., ["Barnsboro"] a home construction business venture.  On September 3, 1987, Barnsboro entered into a loan agreement with Mainstay Federal [Ex. P7].  Mainstay Federal subsequently foreclosed against Barnsboro in July, 1990.  The foreclosure led to a complaint filed in the Superior Court of New Jersey on February 28, 1991 by the Resolution Trust Corporation ["RTC"], conservator for Mainstay Federal, against Mr. Kazin and other defendants, seeking to enforce obligations on the loan agreement.  Mr. Kazin, who was not present at the closing of the Barnsboro loan agreement, disputed the authorization of the person who signed his name to the guaranty.  Ultimately, the Superior Court found him liable on the guaranty, and on November 25, 1992, entered a judgment against him in the amount of $921,000.01, plus pre-judgment interest of $34,766.79 and attorney's fees of $14,076.47 [Ex. P11].

Prior to RTC's lawsuit against Mr. Kazin, but while Barnsboro was liable on the note, Mr. Kazin deeded all interest in 10 Rosetree Lane, Lawrenceville, New Jersey [ "Residence"] to his wife, Christine Petruzzelli, for $1.00 consideration on August 18, 1989 [Ex. P17].  The deed contains no notation that Mr. Kazin retained an interest in the Residence.  At the time of the transfer in title of the Residence, the property was subject to a outstanding $15,000 mortgage in Mr. Kazin's name.

2

After transferring the Residence to his wife, Mr. Kazin has continued to live at the Residence with his wife and their minor child.  Since the transfer, Mr. Kazin and his wife have shared the cost of household living expenses.

On May 30, 1992, Mr. Kazin and Ms. Petruzzelli obtained a 15-year mortgage loan in the amount of $80,000 from New Jersey Central Bank, N.A. secured by a mortgage on the Residence.  From 1992 until the loan was paid off in June 2007, regular monthly mortgage payments of $783.10 were made from the joint checking account of Mr. Kazin and Ms. Petruzzelli at Fleet Bank/Bank of America.  During that time period, Ms. Petruzzelli made no deposits and drew no checks against that joint checking account.  This mortgage was used, in part, to pay off the $15,000 existing mortgage that was outstanding at the time of title transfer in 1989.

In 2001, Mr. Kazin participated with Ms. Petruzzelli in an application for a home equity line of credit from Bank of America on the Residence.  Mr. Kazin also made payments on the home equity line of credit from the funds in the joint checking account.

Mr. Kazin filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on March 3, 2008.  Cadle is the holder of the November 1992 judgment entered against Mr. Kazin in favor of the RTC.  RTC assigned the judgment to Cadle on April 3, 2006.  The full amount of the judgment plus interests and costs remain due and owing on the judgment.  Cadle filed a proof of unsecured claim on May 8, 2008 in the amount of $1,728,753.14.

<u>Discussion</u>

Congress has described § 727's discharge provision as "the heart of the fresh start provisions of the bankruptcy law."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977).  In keeping with that,

3

courts have uniformly held that § 727 must be construed liberally in favor of the debtor.  *See, e.g.*,

In re Brown, 108 F.3d 1290 (10th Cir. 1997); In re Burgess, 955 F.2d 134 (1st Cir. 1992); In re

Adeeb, 787 F.2d 1339, 1342 (9th Cir. 1986).  The Third Circuit has recognized that "[c]ompletely

denying a Debtor his discharge, as opposed to avoiding a transfer or declining to discharge an

individual debt pursuant to § 523, is an extreme step and should not be taken lightly."  Rosen v.

Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993).  The standard of proof for actions brought under § 727

is the preponderance of the evidence" standard.  Grogan v. Garner, 498 U.S. 279 (1991).  The

burden of proof, as in most adversary proceedings and civil matters, is on the plaintiff.  Meridian

Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992).

Section 727 contains the exceptions to the general rule that a court must grant a debtor his

discharge.  It provides:

> (a) The court shall grant the debtor a discharge, unless -
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or
> an officer of the estate charged with custody of property under
> this title, has transferred, removed, destroyed, mutilated, or
> concealed, or has permitted to be transferred, removed,
> destroyed, mutilated, or concealed-
>
> > (A) property of the debtor, within one year before
> > the date of the filing of the petition . . .

11 U.S.C. § 727(a)(2)(A.  To establish a claim under § 727(a)(2)(A), the plaintiff must prove the

following four elements: "(1) a transfer of property; (2) belonging to the debtor; (3) within one year

of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the

estate." In re Duncan, 562 F.3d 688, 698 (5th Cir. 2009).  Mr. Kazin transferred the Residence to his

4

wife in 1989, significantly outside § 727(a)(2)(A)'s one year window.  Therefore, unless Cadle can establish that Mr. Kazin retained an interest in the Residence into the relevant time period, Cadle cannot prevail on its remaining cause of action.

The Third Circuit Court of Appeals has recognized a cause of action under § 727(a)(2)(A) based on the "continuous concealment" doctrine.  Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993).  That doctrine provides that if a debtor conceals an interest in an asset transferred prior to the one year period, and that concealment is accompanied by the requisite intent to defraud creditors, then it is actionable under § 727(a)(2)(A).  Cadle alleges that Mr. Kazin's pattern of conduct evidences an intentional fraudulent concealment of Mr. Kazin's interest in the Residence.

## A.  Concealment of Property

A relevant concealment can occur only if property of the debtor is concealed; therefore, the Court must first determine whether Mr. Kazin possesses some property interest in order to be barred from discharge on the grounds of a "continuing concealment."  Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993).  Here, it is undisputed that Mr. Kazin transferred his entire legal interest in the Residence to his wife on August 18, 1989, and that nowhere in the deed was there a formal retention of any legal or equitable interest in the residence by the Debtor.

The lack of a legally cognizable interest in the property does not end the inquiry: The Court still must determine whether Mr. Kazin retained a "secret interest" in the property.  Rosen, 996 F.2d at 1531.  A "secret interest" has been described as an express or tacit agreement where a debtor has the right to reconveyance on demand, a right to live rent-free, or the retention of control over the property.  Id.  Where a debtor is merely allowed to reside in the property "at the sufferance" of the

title holder, however, courts have found that he has not retained a concealed interest. Id.

Additionally, the Third Circuit has recognized an apparent tension between itself and other Courts

of Appeal on the issue of what constitutes a "secret interest," but maintains that the mere "retention

of benefits of ownership" or "circumstances indicating that the bankrupt continues to use the

property as his own" - although both may be factors tending to show a secret interest - are not in and

of themselves sufficient to establish the existence of such a secret interest. Rosen, 996 F.2d at 1532,

n. 5. "[T]he ultimate focus of the inquiry ... must be whether the debtor actually has any property

interest to conceal." Id.

Cadle first points to the timing of the transfer of the Residence, noting that it occurred on the

"eve of suit" on Mr. Kazin's personal guaranty, as evidence of a fraudulent concealment of Mr.

Kazin's interest in the Residence. *Plaintiff's Trial Brief* at 10. The actual time line of events

demonstrates just the opposite. Cadle disregards the fact that the transfer at issue occurred almost

a year prior to Mainstay Federal's foreclosure against Barnsboro and a full year and a half prior to

the initiation of the lawsuit on the guaranty. The Court cannot find that this transfer was in response

to an immediately foreseeable judgment. It is also noteworthy that eighteen years transpired

between the transfer of the Residence and Mr. Kazin's bankruptcy filing.

Additionally, this is not a case where a debtor transferred property after exposing himself

to certain liability. *See, e.g.,* In re Olivier, 819 F.2d 550, 553 (5th Cir. 1987) (debtor transferred

property two days after an auto accident which exposed him to substantial personal liability). Nor

can Mr. Kazin's one-time transfer of the Residence be compared to a "long-lived scheme" by a

debtor of diverting assets from creditors on advice from an attorney. *See,* In re Hayes, 229 B.R. 263

(1st Cir.

6

B.A.P. 1999).

Cadle next argues that Mr. Kazin's continued occupation and use of the residence "as his own" are facts tending to show that Mr. Kazin retained a secret interest pursuant to an express or tacit agreement with Ms. Petruzzelli. Specifically, Cadle alleges that Mr. Kazin had an understanding with his wife that he would be entitled to live at the residence for the rest of his life. *Complaint* at ¶ 24. In support of this allegation, Cadle relies heavily on Mr. Kazin's response to an interrogatory that "it was his understanding that he would live there as long as he wished." [Ex. P41, Line 12]. The Court finds that interrogatory response did not reflect retention of an equitable interest in the residence, but rather the simple fact that Mr. Kazin and Ms. Petruzzelli co-habitated in the residence as husband and wife. The Court finds far more persuasive Mr. Kazin's trial testimony that if he and his wife divorced "he would just walk away," combined with his wife's testimony that the house belonged to her and that there were "no conditions, stipulations, understandings or agreements." That testimony strongly indicates that Mr. Kazin continued to live at the Residence "at his wife's sufferance" and that he was "subject to eviction at will." Rosen, 996 F.2d at 1532. In short, the Court finds that Cadle has not met its burden of showing evidence of any tacit or written agreements between Mr. Kazin and Ms. Petruzzelli whereby Mr. Kazin retained any legal or equitable interest in the Residence.

Cadle argues that Mr. Kazin's retention of control in the Residence reflects a "secret interest." Specifically, Cadle points to Mr. Kazin's monthly payments on the 1992 mortgage until its maturity date in 2007; his signature on a home equity line of credit in 2001; and the payment of various household expenses as evidence that Mr. Kazin continued to use the property as his own.

7

These facts are insufficient to establish that Mr. Kazin retained a secret interest; those facts could just as easily be evidence that Mr. Kazin resides at the property at Ms. Petruzzelli's sufferance and that she does not allow him to live there rent-free.  Ms. Petruzzelli also contributed to upkeep of the home both in cash and in kind.  As noted in Rosen, "evidence of complete transfer of legal title, even if accompanied by evidence that the debtor continues of use the property, may, in some circumstances, support a contrary inference that the debtor has no remaining interest and only uses the property at the sufferance of the new owner.  Rosen, 996 F.2d at 1532, n. 5.

Given the totality of the circumstances, Cadle has not sustained its burden of proving that Mr. Kazin actually had an interest in the Residence that he could conceal in the year preceding his bankruptcy filing.  In reaching this conclusion, the Court is guided by the principal that determining eligibility to a discharge is within the sound discretion of the court, and in exercising that discretion the court must construe evidence strictly against the plaintiff and in favor of the debtor.  *See, e.g.,* Rosen, 996 F.2d at 1531; In re Burgess, 955 F.2d 134, 137 (1st Cir. 1992).

**B.  Improper Intent**

Even if the Court were to find that Mr. Kazin retained a property interest in the Residence, to prevail on its claim Cadle must also prove that Mr. Kazin harbored a subjective intent during the year before bankruptcy to hinder, delay or defraud creditors.  Rosen at 1532-33.  Cadle has not done that.  Mr. Kazin has consistently maintained that his transfer of title to Ms. Petruzzelli in 1989 was due to health concerns and a desire to avoid probate issues.  Cadle did nothing to undermine that assertion at trial.  This Court declines to hold that a transfer in 1989 due to health concerns is evidence of an intent to defraud creditors in 2007-08.

8

Conclusion

The Court finds that Cadle has failed to meet its burden of proof and that there is no basis

to bar the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A).  Judgment on Count Three is

rendered in favor of the Debtor.  Debtor's counsel should submit a form of order in accordance with

this opinion.


*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: March 30, 2010